COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Lorish and White
Argued at Salem, Virginia

KATHERINE AMANDA FERGUSON

v.          Record No. 1900-22-3

ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
JUDGE DORIS HENDERSON CAUSEY
DECEMBER 28, 2023

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

John S. Koehler (The Law Office of James Steele, PLLC, on brief),
for appellant.

Jennifer L. Crook, Assistant City Attorney (Timothy R. Spencer,
City Attorney; L. Brad Braford, Guardian ad litem for the minor
child, on brief), for appellee.


Katherine Amanda Ferguson (mother) appeals the circuit court's order terminating her

parental rights under Code § 16.1-283(B) and (C)(2) and approving the foster care goal of adoption.

On appeal, mother argues that the circuit court erred in finding the evidence sufficient to

terminate her parental rights under Code § 16.1-283(B) and (C)(2).  Mother claims the circuit

court erred in concluding that the child had been subject to abuse and neglect and that it was in

the best interests of the child to terminate mother's parental rights.  Finding no error, we affirm

the decision of the circuit court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Katherine A. Ferguson is the biological mother to the child, who was one week old at the time of removal.[2] The Roanoke City Department of Social Services (the Department) became involved when the Roanoke City Police received a report that mother "had just given birth [to the child] on the back porch of an abandoned home. The child was laying on the back porch, not moving." The police had previous involvement with mother because mother had a history of substance abuse and was a "known transient." Mother had been "staying in an abandoned house" at the time of the child's birth.

Emergency medical services personnel (EMS) transported mother and the child to the hospital. Mother informed EMS that "she smoke[d] a pack of cigarettes a day, drank during her first trimester and used amphetamines during her pregnancy." The child was born substance-exposed. At the hospital, the child "appeared to be dirty" and was still attached to mother's placenta. The Department spoke with mother at the hospital, during which mother behaved erratically. Mother informed the Department that she had bipolar disorder, severe depression, and borderline personality disorder, but was not taking any medicine for her mental health. Two days following the child's birth, mother was admitted to inpatient psychiatric treatment under a temporary detention order "due to aggressive and threatening behavior."

---

[1] The record in this case was sealed. "[T]his appeal requires unsealing certain portions to resolve the issues raised by the parties. To the extent that certain facts mentioned in this opinion are found in the sealed portions of the record, we unseal only those portions." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022). "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)).

[2] Mother is also the biological mother to an older child that she lost custody of through another locality and did not regain custody. That child resides with the biological father and has no contact with mother.

A few days later, mother's doctor "cleared her to be of mental capacity to make decisions regarding the placement for" the child. Mother advised that the child's maternal grandfather could serve as a placement, but he later "changed his mind" and "was not in a position" to care for the child. Mother informed the Department that no other family members could care for the child, and the child entered foster care in April 2021.

The Roanoke City Juvenile and Domestic Relations District Court (the JDR court) subsequently adjudicated that the child was abused or neglected. The JDR court entered a dispositional order, which mother did not appeal.

Following the child's removal, the Department offered mother several services, including case management, a substance abuse assessment, "inpatient or outpatient treatment upon determining [mother's] needs," drug screenings, referrals for psychological and parental capacity evaluations, and assistance in locating suitable housing and employment. The Department also offered ongoing supervised visitations with the child. Mother was initially compliant with case management services and visitations with the child, but her participation became "sporadic."

Mother "attended two different substance abuse treatment programs, having left and been discharged from both." In June 2021, after she tested positive for methamphetamine and marijuana, mother was admitted for inpatient substance abuse treatment. The treatment program administratively discharged her on July 5, 2021, "due to aggressive behavior, verbal aggression and non-compliance."

Police arrested mother on October 6, 2021, for arson after receiving a report that she "attempted to burn someone's belongings while living on the streets." Mother was in jail for about 30 days, and upon release, attempted to contact the Department.[3] The Department tried to reach

---

[3] Mother was ultimately convicted of arson, and the trial court sentenced mother to two years of imprisonment, all suspended, and one year of probation supervision.

back out to mother, but they were unable to reach her. Mother had no contact with the Department from October 2021 until March 2022.

Based on the Department's "ongoing concerns" about mother's "substance abuse and instability, homelessness, and mental health issues," the Department petitioned for the termination of mother's parental rights. On March 29, 2022, the JDR court entered a permanency planning order approving the goal of adoption. The JDR court entered an order terminating mother's parental rights on May 31, 2022. Mother appealed the JDR court's orders to the circuit court.

The parties appeared before the circuit court on November 29, 2022. The Department offered testimony that the child "was thriving" and "doing phenomenal" in the foster care placement. The child had been in foster care essentially since birth, and had established a familial relationship with the foster family. The child had no relationship with mother, as the last time mother saw the child was in September 2021. Although the child had no health concerns and was developmentally on track, the child was receiving ongoing physical and occupational therapy to address some issues with muscle tone and fine motor skills.

Mother testified that she had been engaged in intensive substance abuse treatment at Blue Ridge Behavioral Healthcare (Blue Ridge) since the JDR court terminated her parental rights and that, since entering treatment, she had regularly tested negative for drug use. Mother's probation officer testified that before she entered treatment, mother had "multiple" positive drug screens and was not compliant with services. However, she also testified that since mother started in substance abuse treatment, she had tested negative for drugs and was engaged in treatment and therapy. Mother also had started attending counseling and taking medicine for her mental health after the JDR court's rulings. Counselors at Blue Ridge assisted mother with her monthly expenses, and with obtaining housing and applying for disability benefits. The housing support, however, only covered mother, and would not cover the child; mother would need to obtain different housing if

- 4 -

she had custody of the child. Mother testified that she loved the child and asked the circuit court for a chance to be the child's mother. Mother stated that she had "changed so much," after engaging in therapy and treatment.

At the close of evidence, the Department argued that the evidence was sufficient to prove that the child was abused and neglected because the child was born outside on a back porch, "was observed to be dirty in the hospital," and mother had used drugs during the pregnancy. The Department acknowledged mother's recent progress leading up to the circuit court hearing, but contended that this progress did not begin within a reasonable time. Mother argued that she had been "doing well for a period of over five months" and had "the ability to provide for the child and to make a home for the child." In asking the circuit court to deny the termination petition, mother alleged that the child would be unaware if she needed "another year" to try to reunite with the child.

After considering the parties' arguments and evidence, the circuit court concluded that the evidence supported termination under both Code § 16.1-283(B) and (C)(2). The circuit court acknowledged and commended mother's work on her sobriety and mental health. The circuit court, however, emphasized how long the child had been in foster care. The circuit court found that the child had bonded with the foster family, but did not have a bond with mother. The circuit court entered orders terminating mother's parental rights and approving the foster care goal of adoption. Mother appeals.

ANALYSIS

Mother argues that the circuit court erred in terminating her parental rights. "'On review of a trial court's decision regarding the termination of parental rights, we presume the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App.

546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). Code § 16.1-283(C)(2) provides that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

Rather than termination of her parental rights, mother argues that the evidence in this case supported the trial court extending the time for her to receive services as a less drastic alternative to the termination of her rights under *Edwards v. Arlington County*, 5 Va. App. 294 (1987). However, *Edwards* is distinguishable from the present case. In *Edwards*, termination of a Korean mother's parental rights was reversed by this Court on the ground that the Department's evidence did not reach the clear and convincing standard that termination of the parental rights was the only viable result. In that case, the mother was struggling with cultural and language barriers and alleged to have a schizophrenic condition. However, this Court noted that "for an extended period of time . . . Edwards showed positive signs indicating an ability to care for [child]." *Id.* at 311. This Court also

found that the evidence showed that the mother displayed a "passionate interest in maintaining contact" with her child throughout the time she was in foster care. *Id.* at 312.

In this case, however, mother and child had no such relationship. Child was removed from mother's custody at one week old. In its ruling, the trial court emphasized how long the child had been in foster care and found that the child had bonded with the foster family but did not have a bond with mother. Additionally, there were no language barriers between mother and the Department. Therefore, *Edwards* does not control the outcome of this case.

The record provides ample evidence to support the circuit court's order terminating mother's parental rights under Code § 16.1-283(C)(2). Following the child's removal, the Department offered mother several services, including substance abuse treatment, counseling, and assistance with housing and employment. Mother, however, did not engage in any services, and in fact, had no contact with the Department or the child for a period of over four months while the child was in foster care.

The circuit court expressly considered that mother benefited from substance abuse and mental health treatment, which she did not start until four months before the circuit court hearing. Despite the time frame specified in the statute, "the factfinder may consider evidence before or after the [12]-month time period in order 'to evaluate the present best interests of the child.'" *Thach v. Arlington Cnty. Dept. of Hum. Servs.*, 63 Va. App. 157, 171 (2014) (quoting *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003)). "The [circuit] court may [also] discount the parent's current 'progress' if the best interests of the child would be served by termination." *Id.* (first alteration in original) (quoting *L.G.*, 41 Va. App. at 56).

Although mother made progress in the four months just before the hearing, the circuit court nevertheless determined that termination was in the child's best interest. We hold that the circuit court's decision was not plainly wrong or without evidence to support it. The child had been in

foster care essentially since birth and was 15 months old by the time mother started participating in services, and 19 months old at the time of the circuit court hearing. Due to mother's delay in obtaining services, the child continued her placement in foster care and bonded with the foster family. The circuit court found that the child had no such bond with mother. Moreover, although mother had obtained suitable housing for herself, she did not offer evidence that this housing would also cover the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Human Servs.*, 62 Va. App. 296, 322 (2013) (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Considering the totality of the evidence, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

The evidence reflected in the record on appeal was clearly sufficient for the circuit court to terminate mother's parental rights under Code § 16.1-283(C)(2); we therefore need not reach whether mother's parental rights also should have been terminated under Code § 16.1-283(B). "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection).

## CONCLUSION

We find that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

*Affirmed.*